*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BLANDING-CARTER, Minors.

UNPUBLISHED
September 17, 2025
9:19 AM

No. 372608
Oakland Circuit Court
Family Division
LC No. 20-881773-NA

*In re* PAUL/BLANDING-CARTER, Minors.

No. 372609
Oakland Circuit Court
Family Division
LC No. 20-881773-NA

Before: WALLACE, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Respondent-mother is the biological mother of the five children at issue in this matter: NP, DP, MP, DBC, and LBC. Respondent-father is the biological father of DBC and LBC. The trial court assumed jurisdiction over the children and terminated respondents' parental rights to the children at the initial dispositional hearing. Respondent-father appeals as of right from the trial court's amended order terminating parental rights in Docket No. 372608, while respondent-mother appeals as of right from that order in Docket No. 372609. The appeals have been consolidated for decision. We now affirm.

In 2023, NP disclosed that respondent-father, who was not her biological father, but was respondent-mother's partner, had been sexually assaulting NP for years. Although respondents did not formally reside together, because they shared two younger children, respondent-father was often at the home respondent-mother provided for the five children. NP revealed the abuse to her aunt, who took her to a hospital for an examination, which led to a criminal investigation. Respondent-father was charged with first-degree criminal sexual conduct (CSC-I) and second-

-1-

degree criminal sexual conduct (CSC-II) and was held in the county jail, awaiting trial on those charges while this matter was pending.

The trial court assumed jurisdiction with regard to respondent-mother's parental rights on the basis of the disclosure made by NP and evidence that NP had told respondent-mother earlier about the abuse, but respondent-mother failed to report the abuse to authorities, although she took NP to the hospital for examinations that included pregnancy tests. Respondent-father admitted to allegations in an amended petition to allow the trial court to assume jurisdiction. Respondent-father entered no-contest pleas to criminal charges involving the reckless firing of a firearm while at the family's home with the children present and filing a false police report. Those criminal convictions and the police report in that matter formed the basis of the court's assertion of jurisdiction over the children with regard to respondent-father.

The trial court considered termination of respondents' parental rights at the initial dispositional hearing, and the court heard from NP and respondent-father's mother. The trial court found NP's testimony recounting the sexual abuse as credible, even though she had difficulty recalling when the sexual abuse started and ended. Nonetheless, her descriptions of what occurred were consistent. NP also described telling respondent-mother about the abuse, but respondent-mother refusing to go the police or Child Protective Services (CPS) because it would mean that the children would be taken from her. Respondent-mother brought NP in for medical care, but did not allow her to meet with medical staff alone. In 2023, NP reached out to her aunt and disclosed the sexual abuse. The aunt brought NP to the hospital and from there, this matter was reported and resulted in the criminal investigation of respondent-father.

The trial court terminated respondent-father's parental rights under MCL 712A.19b(3)(b)(*i*) (sexual abuse of a child's sibling and reasonable likelihood of future abuse), (b)(*ii*) (failure to prevent sexual abuse of the child or the child's sibling and reasonable likelihood of future abuse), (j) (reasonable likelihood of harm if returned to the parent's home), and (k)(*ii*) (criminal sexual conduct involving penetration of a sibling of the child) ("§§ 19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*ii*)"). The trial court also terminated respondent-mother's parental rights under §§ 19b(3)(b)(*ii*) and (j).

After the trial court found that statutory grounds existed to terminate respondents' parental rights, it scheduled a hearing regarding the children's best interests. Respondent-father requested that the court delay that hearing so that he could obtain the results of a recent HIV test and confer with a medical expert because he had been diagnosed with HIV in about 2015, and he argued that this evidence contradicted NP's allegations against him because she tested negative for HIV. The trial court granted the first motion to adjourn the best-interest hearing, but it refused to further delay that hearing when respondent-father moved for an adjournment a second time. Nonetheless, the trial court advised respondent-father that he could offer this evidence at the best-interest hearing, although it was not clear that it was relevant to the issues before the court at that hearing.

During the best-interest hearing, the trial court learned that NP was not the only one of the children who may have been sexually abused. DP was found engaging in sexual conduct with his younger sibling, DBC, when they were both residing with their aunt. DP admitted to improperly touching his younger sibling, LBC. DP was removed and placed in a residential facility to receive treatment. DBC also was observed engaging in sexual conduct with his younger cousin and he

-2-

also was in the process of being moved from his aunt's home. DBC was believed to have engaged in other sexual behavior with his younger sibling, LBC, and his cousins. There was no evidence that the children's sexual conduct was attributed to abuse by respondent-father. However, DP reported being abused by one of respondent-mother's friends.

The children's aunt planned to adopt NP, MP, and LBC. All of them were doing well with their aunt. Because the aunt wished to permanently plan for the children, she did not favor a guardianship arrangement with respondents, when that would not give the children the permanency and stability they needed.

The children's caseworker believed that termination of respondent-mother's parental rights was in the children's best interests because respondent-mother failed to emotionally support the older children, particularly NP when she revealed she was being sexually abused. Instead, respondent-mother did not believe that the matter should be reported to the authorities. Respondent-mother later questioned why the children's aunt reported the sexual incident between DP and DBC.

However, because respondent-father was incarcerated while this matter was pending and the caseworker could not assess his parenting skills when he did not visit with his children, the caseworker was not able to definitively say that termination of his parental rights was in the best interests of DBC and LBC.

The trial court found, for each of the children, termination of respondents' parental rights was in their best interests when it allowed them to receive the services and support they required, as well as permanency and stability lacking in their lives with respondents.

## I.  DOCKET NO. 372608

### A.  ANTICIPATORY NEGLECT

Respondent-father challenges the trial court's reliance on the doctrine of anticipatory neglect when the court found that statutory grounds were proven to support termination of his parental rights. This raises a question of law that this Court reviews de novo. *In re Dawson*, 232 Mich App 690, 693; 591 NW2d 433 (1998). Furthermore, respondent-father challenges the trial court's findings of fact in support of the statutory grounds for termination of his parental rights. A trial court's factual findings following a termination hearing are reviewed by this Court for clear error. MCR 3.977(K). "A finding is clearly erroneous if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Gonzales/Martinez Minors*, 310 Mich App 426, 430-431; 871 NW2d 868 (2015) (quotation marks and citation omitted). This Court must also give regard to the trial court's special opportunity to judge the credibility of the witnesses who appeared before it. *Id*. at 431.

Petitioner had the burden of proving at least one statutory ground for termination of parental rights by clear and convincing evidence. *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003). The trial court found that grounds for termination of respondent-father's parental rights were proven under both § 19b(3)(b)(*i*) and (*ii*). The trial court also found that there was other evidence of emotional, verbal, and physical abuse by respondent-father, directed at the children

and respondent-mother, that supported termination of respondent-father's parental rights under § 19b(3)(j). The trial court further found that a ground was proven under § 19b(3)(k)(*ii*), given that the testimony showed that respondent-father sexually penetrated NP and the court believed that, as a result, any children in respondent-father's care would be harmed.

The statutory grounds relied on by the trial court provide as follows:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

While petitioner failed to cite § 19b(3)(b)(*i*) in its petition as a ground for seeking to terminate respondent-father's parental rights, the trial court's reliance on this ground does not require reversal when there were other grounds supported by the court's ruling and only one ground is required to terminate parental rights. Moreover, respondent-father had notice that petitioner was relying on § 19b(3)(b) and that the facts in support of terminating his parental rights involved his sexual abuse of NP, not his failure to protect NP from sexual abuse. See *In re Perry*, 193 Mich App 648, 651; 484 NW2d 768 (1992). Under these circumstances, relief is not warranted merely because the petition did not cite § 19b(3)(b)(*i*).

Respondent-father argues that none of the grounds were proven because the trial court relied solely on the doctrine of anticipatory neglect to find that because he was charged with sexual assault of NP, his own children were at risk of abuse or neglect. We do not believe that error has been shown.

-4-

The anticipatory-neglect doctrine provides that how a parent treats one child may be probative of how that parent may treat other children. *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). The doctrine may apply to confer jurisdiction in cases where there are multiple children. *Id*. at 258-259. The inference of how the parent treats one child is probative of how he or she will treat other children can be lessened by differences between the children, including ages and medical conditions. *In re LaFrance Minors*, 306 Mich App 713, 730-731; 858 NW2d 143 (2014). "This doctrine inherently acknowledges that no actual detrimental act has occurred." *In re Christie*, 339 Mich App 1, 6; 981 NW2d 172 (2021).

The trial court applied the doctrine of anticipatory neglect in this case because some of the statutory grounds found by the trial court involved termination of parental rights when the facts showed that a parent abused another child. See §§ 19b(3)(b)(*i*) and (k)(*ii*). Both of these subsections incorporate the theory behind anticipatory neglect into the statutory grounds, and the trial court cited both of these grounds in its findings with regard to respondent-father. Therefore, the trial court did not base its findings solely on the anticipatory-neglect doctrine.

Both §§ 19b(3)(b)(*i*) and (k)(*ii*) allowed the trial court to consider evidence of respondent-father's sexual abuse of a sibling of respondent-father's child. Because §§ 19b(3)(b)(*i*) and (k)(*ii*) both incorporate anticipatory neglect or abuse into the statutory grounds and the trial court found that grounds were established under those subsections, respondent-father has not shown that error occurred as a matter of law. Furthermore, he contends that there was no evidence that he sexually abused other children, but neither of these grounds requires repeated offenses to terminate a parent's rights. The single abuse of one, unrelated child can, as a matter of law, support terminating parental rights under §§ 19b(3)(b)(*i*) and (k)(*ii*).[1] Respondent-father therefore incorrectly suggests that expert testimony was required to prove that he was a danger to his own children or a sexual predator because the victim was not his biological child. However, it must be noted that the trial court found that NP was credible and her testimony described repeated sexual assaults, not an isolated incident. Furthermore, respondent-father assumed a parental role when he spent time with the family.

The trial court also did not clearly err in finding that the facts proved, by clear and convincing evidence, at least one statutory ground to support termination of respondent-father's parental rights to DBC and LBC. With regard to § 19b(3)(b)(*i*), the trial court found that NP's testimony about respondent-father sexually abusing her for years was credible. NP's testimony established that a sibling of respondent-father's children suffered sexual abuse caused by respondent-father. Given the abuse inflicted on NP, it was also not error for the trial court to find that DBC and LBC faced a reasonable likelihood that they also would suffer injury or abuse if placed with respondent-father, even if they might not have been subject to the same type of sexual abuse NP suffered. The trial court found that there was other abuse occurring in the family home, involving verbal, emotional, and physical abuse directed at respondent-mother, and another,

---

[1] The word "sibling" in the Juvenile Code means "one of two or more individuals having one or both parents in common; a brother or sister." *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011) (cleaned up). Thus, NP was a "sibling" to respondent-father's children because these children had respondent-mother as a common parent.

unnamed child. A statutory ground for termination of parental rights was proven under § 19b(3)(b)(*i*).

However, it does appear that it was error for the trial court to cite § 19b(3)(b)(*ii*) as a ground for terminating respondent-father's parental rights when that ground addresses a parent's failure to protect the child or the child's sibling from sexual abuse. The facts showed that respondent-father was the perpetrator of the abuse. For this reason, the trial court should have cited only § 19b(3)(b)(*i*) as a ground for terminating respondent-father's parental rights. However, even if it was error for the trial court to cite this incorrect subsection, petitioner established at least one other ground existed, and only one ground need be proven by clear and convincing evidence. Accordingly, reversal for this reason is not required when any error was harmless. See *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

Under § 19b(3)(j), the trial court also found that the children would likely be harmed if returned to respondent-father's custody because of the abuse by respondent-father directed at respondent-mother, not only the sexual abuse of NP. In addition, when the court assumed jurisdiction in this matter, respondent-father admitted to firing a gun in the street in front of the family's home while the children were present. Although the facts in this case centered around the sexual abuse of NP, there were other facts offered that showed that respondent-father both was abusive and also neglected his duties as a parent, but pushed them off onto NP, by having her take care of LBC. The facts showed that DBC and LBC would be harmed if returned to respondent-father's custody, supporting termination of his parental rights under § 19b(3)(j).

Furthermore, respondent-father's sexual abuse of NP, which she described involved actual penetration, supported terminating his parental rights under § 19b(3)(k)(*ii*). The trial court specifically found that NP was sexually penetrated and that this abuse supported the court finding that any other children in respondent-father's care would also likely be harmed. Once again, his abusive treatment of NP properly supported terminating his rights because there was a reasonable likelihood that DBC and LBC would also be harmed if returned to his custody, considering respondent-father's other abusive and dangerous conduct. Respondent-father therefore has not shown that the trial court's findings on this statutory ground are clearly erroneous.

To summarize, respondent-father fails to show that termination of his parental rights was in error because the anticipatory-neglect doctrine was wrongly applied or because the evidence proved only a single instance of sexual assault. The trial court properly found that statutory grounds existed to terminate his parental rights under §§ 19b(3)(b)(*i*), (j), and (k)(*ii*).

## B. BEST INTERESTS

Respondent-father also challenges the trial court's findings that termination of his parental rights was in the best interests of DBC and LBC. The trial court's decision on the children's best interests is reviewed for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding is clearly erroneous if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Gonzales/Martinez Minors*, 310 Mich App at 430-431 (quotation marks and citation omitted).

Once a statutory ground for termination has been proven by the petitioner, the trial court must find that termination of the respondent's parental rights is in the children's best interests before terminating parental rights. MCL 712A.19b(5); MCR 3.977(E)(4). "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance Minors*, 306 Mich App at 733.

> In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, see *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004), the parent's parenting ability, see *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009), the child's need for permanency, stability, and finality, see *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011), and the advantages of a foster home over the parent's home, *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5); see also MCR 3.977(E)(4). [*In re Olive/Metts Minors*, 297 Mich App at 41-42.]

The trial court must decide the best interests of each child individually. *Id*. at 42.

The child's placement with a relative is a factor that the trial court is required to consider, and placement with a relative weighs against termination of parental rights. *In re Gonzales/Martinez Minors*, 310 Mich App at 434.

The trial court made very thorough and extensive findings with regard to all of the children, including DBC and LBC. Both children have suffered at the hands of a turbulent life with respondent-father. DBC has shown hypersexuality, and LBC has been the victim of sexual abuse. The environment to which respondent-father contributed in the children's home not only involved sexual abuse of their sibling, but also violence and emotional abuse. Respondent-father admitted to firing a gun and lying to the police when the children's aunt tried to help NP and DP leave the home. There is no question that respondent-father has contributed to a very chaotic and dangerous home life for these children.

There also is no dispute that there is no reasonable likelihood that respondent-father could provide a stable, safe home for the children at any time in the near future, even if he were to be released from incarceration. He admitted to rarely caring for the children, he may not have had a regular, legitimate source of income, and he lacked stable housing.

Respondent-father offered no obvious redeeming qualities as a parent to either child. He made no effort to contact the caseworker to see how the children were doing. Respondent-father may have had a bond with DBC before he was incarcerated, but that bond certainly has not been sustained since his incarceration. Nothing respondent-father offered could help these children with their physical, emotional, and intellectual needs. Before he was incarcerated, he admitted that he left caring of the children to others, such as NP and respondent-mother, because respondent-father was often at work.

Respondent-father offered his mother as a placement for the children, but then she apparently removed herself from consideration by telling the caseworker that her home was not fit for the children, and she failed to appear in court to express an interest in caring for the children at the time of the best-interest hearing. The record showed that the only relative who supported the children was their aunt, who had plans to adopt LBC and also may adopt DBC. Termination of respondent-father's parental rights made it possible for their aunt to proceed with her plans to adopt the children. Although the placement with a relative could have given respondent-father additional time to address his parenting abilities to possibly regain custody in the future, because of the abuse inflicted on all of these children, DBC and LBC cannot wait for respondent-father's release from incarceration, they need permanency and stability in their lives in the very near future. Terminating respondent-father's parental rights gives these children a greater opportunity at receiving consistent therapeutic and other treatment because their aunt and other caregivers can offer the stability and permanency the children require.

The trial court's findings that termination of respondent-father's parental rights was in the children's best interests were not clearly erroneous.

## II. DOCKET NO. 372609

### A. JURISDICTION

Respondent-mother challenges the trial court's decision to assert jurisdiction in this matter. This Court summarized the standard of review on the adjudicative phase in *In re Kellogg*, 331 Mich App at 253, as follows:

> "To acquire jurisdiction, the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2." *In re Brock*, 442 Mich 101, 108-109; 499 NW2d 752 (1993). Challenges to the court's decision to exercise jurisdiction are reviewed "for clear error in light of the court's finding[s] of fact." *In re BZ*, [264 Mich App at 295.] "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

Petitioner requested that the trial court assume jurisdiction over the children under MCL 712A.2(b)(1) and (2). MCL 712A.2(b)(1) and (2) provide as follows:

> The court has the following authority and jurisdiction:
>
> * * *
>
> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or

her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. As used in this sub-subdivision:

* * *

(B) "Neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

(C) "Without proper custody or guardianship" does not mean a parent has placed the juvenile with another person who is legally responsible for the care and maintenance of the juvenile and who is able to and does provide the juvenile with proper care and maintenance.

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

Respondent-mother's argument is that because NP did not testify during the adjudicative hearing, the facts did not prove that any act of sexual assault involving NP occurred. The general facts the trial court relied on for both grounds to assume jurisdiction were essentially the same. This matter came to petitioner's attention after NP disclosed that she had been sexually abused by respondent-father. The trial court rejected respondent-mother's argument that the court should not assume jurisdiction because NP did not testify and the family could not have lived in Pontiac in 2018, thereby discrediting the initial allegation made by NP about when the abuse likely started.

NP disclosed during the investigation that the abuse had gone on for years and occurred on a regular basis, even when respondent-mother was in the home. The trial court heard from both a CPS investigator and a detective who were involved in investigating NP's allegations against respondent-father, and those witnesses explained to the court how NP revealed the abuse and, more importantly, that respondent-mother sought medical treatment for NP that included possible pregnancy testing, but that respondent-mother never contacted the authorities concerning NP being the victim of sexual abuse.

Thus, the trial court heard testimony from both the CPS investigator and a detective regarding the statements NP made disclosing the sexual abuse. Petitioner focused its evidence on the disclosures NP made about the abuse and how respondent-mother reacted to that news to prove that respondent-mother's home was unfit for the children to support the trial court assuming jurisdiction. Most importantly, the detective testified that respondent-mother was aware that NP disclosed being sexually abused by respondent-father, but respondent-mother failed to take appropriate steps to protect her. Respondent-mother even made statements about believing NP, but then also inconsistently stated that she believed that her family had made NP make the accusations against respondent-father. Respondent-mother admitted to learning about the possible sexual abuse from NP.

The trial court's ruling focused on respondent-mother's testimony and, in sum, the court found that she was not a credible witness when trying to explain why she brought NP to the hospital for medical care that might have resulted in NP disclosing the abuse sooner. Instead, respondent-mother would not allow NP to be alone with the medical staff. Respondent-mother's conduct suggests that she was aware that respondent-father was sexually abusing NP and she refused to report it, although she sought medical treatment for NP. Respondent-mother seemed to be more concerned that NP may be pregnant by respondent-father than protecting her child from further abuse.

The trial court's ruling largely came down to a credibility decision when respondent-mother attempted to show that she had properly protected NP by making sure that NP was not left alone with respondent-father. However, the trial court found that it was simply not credible for respondent-mother to make that assertion when she had four other children. Moreover, respondent-mother admitted that she spent some time in the hospital and respondent-father was required to care for all of the children while she was hospitalized. This Court must give regard to the trial court's special opportunity to judge the credibility of the witnesses who testified before it. *In re Gonzales/Martinez Minors*, 310 Mich App at 431.

Petitioner met its burden by showing by a preponderance of the evidence that the children were neglected because respondent-mother failed to protect NP from sexual abuse after it was apparent that NP was being abused. The mental well-being of the children also was at a substantial risk of harm from respondent-mother's failure to protect them. Petitioner established jurisdiction under MCL 712A.2(b)(1).

Furthermore, for the same reasons, petitioner established that respondent-mother's home, by reason of neglect, was an unfit place for the children to live in when she again failed to take reasonable steps to protect the children from abuse by respondent-father, supporting jurisdiction under MCL 712A.2(b)(2).

Respondent-mother has failed to show that the trial court clearly erred in finding that grounds existed to assume jurisdiction over the children under MCL 712A.2(b)(1) or (2).

B. STATUTORY GROUNDS FOR TERMINATION OF PARENTAL RIGHTS

Respondent-mother also challenges the statutory grounds found by the trial court to terminate her parental rights. The trial court found that statutory grounds were proven by clear and convincing evidence under § 19b(3)(b)(*ii*) (failure to prevent sexual abuse and a reasonable likelihood of future abuse) and § 19b(3)(j) (reasonable likelihood of harm if returned to the parent's home). We find that the trial court did not clearly err in its findings in support of the statutory grounds. MCR 3.977(K); *In re Gonzales/Martinez Minors*, 310 Mich App at 430-431.

Under § 19b(3)(b)(*ii*), the evidence must show that the parent's failure to prevent the sexual abuse was caused by the parent's act "and not merely contributed to by an unintentional omission." *In re LaFrance*, 306 Mich App at 725.

Even if respondent-father did not regularly live with respondent-mother and the children, he often visited and stayed with the family, giving him access to NP. The trial court found that

NP's testimony about the repeated sexual assaults by respondent-father was credible. In contrast, the trial court found that respondent-mother's testimony was not credible. NP told respondent-mother about the sexual abuse and respondent-mother brought her for medical treatment, but she did little to protect NP and her siblings from further abuse. It was apparent that respondent-mother either did not believe NP or refused to report the matter so that she would not lose custody. Although respondent-mother claimed that she always supervised the children to protect them from respondent-father, the trial court rejected that testimony on credibility grounds.

The facts showed that respondent-mother was aware of the sexual abuse of NP by respondent-father, but she took steps to keep NP from disclosing the abuse so that the children would not be removed from respondent-mother's custody. Respondent-mother's actions did not involve unintentional omissions or negligence. Rather, she knowingly continued to allow respondent-father into the family home, allowing him to continue to assault NP. Respondent-mother's disregard for the safety of NP demonstrated that all of the children were at risk of abuse in her custody. The trial court did not clearly err in finding that grounds existed under § 19b(3)(b)(*ii*) to terminate respondent-mother's parental rights.

Moreover, the facts supported termination of respondent-mother's parental rights under §19b(3)(j). The facts showed by clear and convincing evidence that there was a reasonable likelihood that the children likely would be harmed if returned to respondent-mother's care. *In re Gonzalez/Martinez Minors*, 310 Mich App at 433-434. Respondent-mother failed to protect NP from continued abuse. It therefore was reasonable for the trial court to find that all of the children in respondent-mother's care likely would be harmed if returned to her custody.

As previously discussed, after the trial court conducted the hearing on the statutory grounds and found that there were grounds to terminate the parental rights of both respondents, respondent-father moved to adjourn the best-interest hearing so that he could offer evidence related to his HIV status. At the time of the best-interest hearing, respondent-father testified about his HIV status and attempted to offer as evidence his medical records. He did not have any expert testimony to explain how those results could have impacted this case. As a result, the trial court ruled that the medical records were inadmissible as irrelevant. Respondent-mother now argues that the trial court should have allowed this evidence in and reopened the proofs on the statutory grounds because if respondent-father had tested HIV positive, he likely would have infected NP, which would prove that NP lied.

Respondent-mother incorrectly argues that there was a motion to reopen the proofs. Respondent-father instead only requested an adjournment of the best-interest hearing, and the court granted his first request. While the second request was denied, respondent-father was allowed the opportunity to call witnesses who might have had information about his HIV status and the possibility that NP could have been infected. However, offering his medical records without any expert guidance was not permitted by the trial court when there was no way to understand how respondent-father's test results impacted this case.

To the extent that respondent-mother argues that the trial court should have allowed respondent-father to admit his medical records, no error has been demonstrated. The proffered records were properly excluded because without some expert guidance, respondent-father's HIV

status had no impact on the issues before the trial court. The records were properly excluded as irrelevant. MRE 401 and 402.

The trial court did not clearly err in finding that at least one statutory ground supported termination of respondent-mother's parental rights.

## C. BEST INTERESTS

Respondent-mother argues that the trial court clearly erred in finding that termination of her parental rights was in the children's best interests. *In re Olive/Metts Minors*, 297 Mich App at 40. We disagree.

In her argument, respondent-mother misrepresents much of the testimony concerning her bond with the children and her potential for improving her parenting skills in the near future. While respondent-mother was bonded to the children, the older children resented her for not protecting NP and ignoring their feelings, but instead focusing on the younger children. MP also was often ignored by respondent-mother, even though she likely would have been more dependent on respondent-mother for care and assistance because of her cerebral palsy.

As for respondent-mother's ability to provide a home for her children, there is no reason to believe that she could care for her children in the near future when she had just begun counseling and had no stable housing. Her employment history also was not stable. Respondent-mother had difficulty caring for herself, so she cannot be expected to be able to care for her children.

The children require substantial support and care because of the apparent sexual abuse most, if not all, have suffered or to which they have been exposed. DP and DBC in particular require immediate intervention to help them with hypersexual conduct. NP requires counseling to help her address her trauma. However, respondent-mother consistently put the children's needs and feelings second to her own. The record does not show that respondent-mother had the capacity to address the serious problems these children are facing. In contrast, since they have been moved from respondent-mother's custody, they are receiving services to address their needs. In particular, NP, MP, and LBC have the possibility of being adopted by their aunt. Termination of parental rights is therefore in their best interests because they will receive permanency and support from their aunt. DP and DBC also have better chances at finding permanent homes and supportive parents by terminating respondent-mother's parental rights.

The trial court also rejected any guardianship arrangement when addressing respondent-father's parental rights only. Even if the trial court did not consider this option for respondent-mother, it is clear that both the aunt and the caseworker rejected guardianships because it prevented the children from having any permanency in their lives for the immediate future.

Here, guardianships were not adopted because of the facts of this case, not on the basis of a departmental policy. Compare *In re Affleck/Kutzleb/Simpson*, 505 Mich 858 (2019). Once again, these children required stable, permanent homes so they can receive treatment to address the harm they felt from abuse. Guardianships were not in the children's best interests.

The trial court did not clearly err in finding that termination of respondent-mother's parental rights was in the children's best interests.

## III.  CONCLUSION

There were no errors warranting relief in either Docket No. 372608 or Docket No. 372609. Therefore, we affirm.

/s/ Randy J. Wallace
/s/ Michael J. Riordan
/s/ James Robert Redford